***NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALLEN J. FARMER, | : : : | Civil Action No. 12-5716 (SDW) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| GARY M. LANIGAN, et al., | : : | |
| Defendants. | : : : | |

**WIGENTON**, District Judge:

Presently before the Court is Defendant D. Marquez's motion to dismiss Plaintiff's amended complaint. (ECF No. 179). Plaintiff, Allen J. Farmer, filed a brief in opposition (ECF No. 188). Defendant Marquez did not file a reply brief. For the following reasons, this Court will grant in part and deny in part Defendant's motion to dismiss.

## I. BACKGROUND

As this Court has previously summarized the basic facts underlying Plaintiff's claims in its opinion screening Plaintiff's original complaint (ECF No. 3), and as the current motion to dismiss deals only with Defendant Marquez, this Court will summarize only those facts pertinent to Plaintiff's claims against Marquez, who was originally referred to as "Diaz" in this Court's prior opinion. According to Plaintiff's amended complaint, Marquez was, at the time of the relevant events, a corrections officer recruit employed by the New Jersey Department of Corrections at New Jersey State Prison. (ECF No. 74 at 3). Plaintiff, as of September 2011, although still a pre-trial detainee, had been transferred to New Jersey State Prison from Union County jail

following his having raised complaints against the jail and a jail official for claiming, allegedly without basis, that Plaintiff was a high risk inmate. (*Id.* at 5). Upon his transfer, Plaintiff alleges that he was abused and mistreated by several corrections officers including an officer White and an officer Hamilton. (*Id.* at 6). Plaintiff also alleges that he was placed in a wing of the prison with violent offenders and offenders with histories of sexual violence, and that Officer Hamilton told Plaintiff that he "would not make it out of the prison alive" if he didn't drop his then pending lawsuits. (*Id.*).

Plaintiff alleges that, after several months of abuse following his transfer, he was cleaning his cell on February 4, 2012 when he was "attacked from behind by an unknown prisoner." (*Id.*). Plaintiff further states that he was struck by the prisoner in the head, neck, back, and shoulders with a broom handle, resulting in his being briefly knocked unconscious, only awakening when the inmate began to remove his pants while threatening to rape and kill him. (*Id.*). Plaintiff alleged that the inmate told him that the attack was because Plaintiff was a "snitch" who liked to complain and sue the police. (*Id.*). Although Plaintiff was able to prevent himself from being raped, he was beaten and eventually thrown from his cell by the attacker, who continued to beat him in plain view of "the other inmates on the unit" who began to make noise to draw the attention of officers including White and Marquez. (*Id.* at 7). Plaintiff further alleges that White and Marquez watched this assault continue with Officer Hamilton, with one of the three officers locking the door to Plaintiff's cell so that he could not escape the assault. (*Id.*). While watching the attack, none of the officers issued an alarm, intervened, or otherwise sought to help Plaintiff until after the attacker fled back to his cell. (*Id.*). After the attack had ended, Officer White approached Plaintiff and told him that if he "made any waves" about the attack, he "wouldn't be

2

so lucky the next time" and that Plaintiff had "better think about dropping his lawsuit because nobody like[s] a snitch." (*Id.*). The officer also intimated that Plaintiff wouldn't be protected if he didn't drop the suit. (*Id.*).

In his complaint, Plaintiff also alleges that the attack was the result of a conspiracy of several officers, including Defendants White, Hamilton, and Marquez, who sought to retaliate against Plaintiff based on his filing complaints against jail officials by subjecting him to attack by another inmate. (*Id.* at 10). In furtherance of that conspiracy, Plaintiff alleges that Officer Hamilton had actually broken a padlock which would have prevented the attack in order to provide the attacker means to reach Plaintiff, and that other officers after the fact filed reports stating that the padlock had broken only later to cover up these actions. (*Id.*). Plaintiff also alleges that Officers White and Hamilton provided the broomstick which was used to attack Plaintiff to the prisoner who attacked Plaintiff. (*Id.*). Plaintiff's only allegations, other than as to her failure to intervene, connecting Defendant Marquez to the conspiracy is his allegation that Marquez, along with several others, "[e]ach collectively & individually conspired to cover up the nature & extent of the assault . . . by . . . filing false reports & attempting to fabricate, plant, & otherwise create evidence to cover up & minimize the intentional willf[u]l & criminal actions committed against" Plaintiff. (*Id.*).

In his original complaint, Plaintiff pled additional facts regarding the actions of Defendant Marquez. (ECF No. 1 at 14). Specifically, Plaintiff's original complaint contained an allegation that "once plaintiff's cell door had been opened [by Officer White,] [Marquez] was ordered by [White and Hamilton] to . . . open the other inmate's cell door so that the other inmate could retrieve the large stick" and assault Plaintiff. (*Id.* at 14). Plaintiff excised the allegation that it

3

was Marquez, as commanded by White and Hamilton, who released the other prisoner from his amended complaint, and has not sought to replead those allegations since the filing of the amended complaint. (*See generally* ECF No. 74, 113).

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss for failure to state a claim, a complaint must allege "sufficient factual matter" to show that its claims are facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dempster*, 764 F.3d at 308 (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

4

### B. Analysis

In his complaint, Plaintiff asserts that Defendant Marquez, alongside other officers, violated his constitutional rights, and seeks redress for these violations pursuant to 42 U.S.C. § 1983. That statute provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, Plaintiff must show that "he was a deprived of a federal constitutional or statutory right by a state actor." *Id.* When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims was violated and determine whether Plaintiff has properly alleged the violation of such a right at all. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In his amended complaint, this Court construes Plaintiff to essentially present two claims against Defendant Marquez – a claim for failure to protect/intervene in violation of Plaintiff's Fourteenth Amendment rights, and a claim for conspiracy to retaliate against Plaintiff for filing a civil complaint in violation of Plaintiff's First Amendment rights. Defendant Marquez moves to dismiss both claims for failure to state a claim for relief based on the allegations in the amended complaint, and argues that she is, in any event, entitled to qualified immunity as to both claims.

#### 1. Plaintiff's Law of the Case argument

Plaintiff initially argues that Marquez's motion should be denied outright pursuant to the law of the case doctrine because this Court has previously held that Plaintiff's initial complaint contained sufficient factual allegations to state claims for failure to protect/intervene and first

5

amendment retaliation against her. "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (quoting *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The doctrine is designed to "promote finality, consistency, and judicial economy." *Id.* at 787. The law of the case doctrine, however, does not apply where new evidence, or in the case of a motion to dismiss, new allegations have been made which change the nature of the record and place it in an altogether different state than it was in at the time the Court decided the issue at hand. *Id.*

Here, Plaintiff argues that the law of the case doctrine should prevent Marquez from seeking dismissal because this Court previously screened Plaintiff's initial complaint and permitted the claims against Marquez to proceed. While it is true that this Court previously screened Plaintiff's initial complaint (ECF No. 3), and that the standard for screening a complaint is equivalent to that used to decide a motion to dismiss, *see Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)), it does not follow that the law of the case doctrine controls this motion to dismiss. The reason for this conclusion is clear – the "law of the case" on which Plaintiff seeks to rely is this Court's screening of Plaintiff's *original* complaint. Plaintiff's filing of an amended complaint, in which he pled facts which are not identical to those in his original complaint, changed the factual allegations which are before this Court. Thus, this case fits the exception to the law of the case doctrine where that doctrine is inapplicable – where the facts of the case have essentially changed and the law as it applies to the facts as they now stand must be re-evaluated. *See Hamilton*, 322 F.3d at 787. Plaintiff's reliance on the law of the case doctrine is therefore misplaced, and this Court's prior screening opinion,

6

though relevant to the task at hand, does not control of the outcome of this motion to dismiss Plaintiff's amended complaint as to Defendant Marquez.

## 2. Plaintiff's Failure to Protect Claims

Defendants first argue that Plaintiff failed to state a claim for failure to protect or failure to intervene in the attack he suffered. In this claim, Plaintiff essentially asserts that Marquez stood by and watched while he was brutally beaten, without intervening or calling for help. In *Bistrian v. Levi*, the Third Circuit explained such claims as follows:

> "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, [511 U.S. 825, 834] (1994) (quotation marks omitted). As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833[] (quotation marks omitted); *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 130–33 (3d Cir.2001); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997).
>
> The Cruel and Unusual Punishments Clause, however, does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor*, 490 U.S. 386, 392 n. 6[] (1989); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir.2005)[.] Thus, an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16[] (1979); *Fuentes v. Wagner*, 206 F.3d 335, 341–42 (3d Cir.2000). We have not yet in a precedential opinion recognized that an unsentenced inmate may bring a due process-grounded failure-to-protect claim of the sort that a sentenced inmate can bring under the Eighth Amendment. But it is well established that, under the Constitution's guarantees of due process, an unsentenced inmate "is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Fuentes*, 206 F.3d at 344 (quotation marks and alterations omitted). Therefore, . . . an inmate who at all relevant times was either not yet convicted or convicted but not yet sentenced [has] a clearly established

7

> constitutional right to have prison officials protect him from inmate violence.[]
>
> Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834[.] To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. *Id.* at 834[]; *Hamilton*, 117 F.3d at 746.
>
> "Deliberate indifference" in this context is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers–Capitol*, 256 F.3d 120 at 125. It is not sufficient that the official should have known of the risk. *Id.* at 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842[.] In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

696 F.3d 252, 366-67 (3d Cir. 2012) (discussing claims based on attacks occurring against a pre-trial/pre-sentence detainee in 2006-2007).

One species of failure to protect claim which is especially applicable here is one based on an officers failure to intervene when one prisoner is attacked by another. As the Third Circuit explained in *Bistrian*, "a corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had 'a realistic and reasonable opportunity to intervene' and 'simply refused to do so.'" *Id* at 371. The Third Circuit in that matter further explained that it "hardly break[s] new ground [to] extend[] this standard to inmate-on-inmate attacks." *Id.* Indeed, "if an officer witnesses an inmate assault and fails to intervene, 'his actions would seemingly constitute a paradigm case of deliberate indifference.'" *Id.* (quoting

8

*Grieverson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008).

In this matter, Plaintiff has clearly alleged that, at the very least, Defendant Marquez stood by and watched without intervention as he was brutally beaten with a broom handle, and did not intervene or attempt to help in any way – including by sounding an alarm or calling for help. Indeed, Plaintiff has also alleged that she did nothing even though either she herself or one of the other guards actually locked the door to his cell to cut off his escape from the alleged attack. Thus, it is clear that Plaintiff has pled more than sufficient facts to show that he was incarcerated under a situation which presented a substantial harm in so much as he was being beaten with a broom handle, that Marquez was deliberately indifferent in so much as she was clearly aware of the attack as she watched it unfold and did nothing to aid him, and that he suffered harm as a result in so much as he was severely injured by the beating. Thus, whether the claim is characterized as a classic failure to protect claim, or as a more specific failure to intervene claim (which is itself a species of failure to protect), Plaintiff has clearly stated a claim for relief as to Marquez's failure to halt or otherwise prevent his being beaten in her presence.

Marquez also argues, however, that, although Plaintiff has stated a claim for relief, the claim against her should still be dismissed on qualified immunity grounds as such a claim was not clearly established at the time of her actions. This argument is patently without merit. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, courts engage in a two-pronged

9

analysis. *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A right is considered clearly established either where there is applicable Sureme Court precedent on the issue, or where "existing precedent [has] placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083). Thus, where "the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right," the plaintiff's claim is clearly established, and qualified immunity will not shield the defendant's conduct. *Id.*

As this Court has already determined that Plaintiff has stated a claim for a violation of his constitutional rights, i.e. Plaintiff's having been beaten by an inmate in clear view of Marquez and Marquez's deliberate indifference to that attack, the only question as to qualified immunity is whether that claim was clearly established in February 2012. In support of this argument, Marquez argues that, to the best of her knowledge, *Bistrian* was the first case in this circuit which explicitly held that a failure to protect claim brought by a pre-sentence inmate based on an officer's failure to intervene in an inmate beating was cognizable under the Fourteenth Amendment. Counsel, however, does not address the fact that *Bistrian* explicitly held that such a claim was clearly established. 696 F.3d at 367, 371. As *Bistrian* explained, the conclusion that a failure to protect claim based on such allegations holds under the Fourteenth Amendment was compelled by the fact that such a claim was clearly established as to convicted prisoners, *see Farmer*, 511 U.S.

10

at 833-34, and by case law establishing that pre-trial detainees have rights at least as protective, *see Fuentes*, 206 F.3d at 344; *see also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (due process rights at least as protective as Eighth Amendment rights of convicted prisoner). *Bistrian*, 696 F.3d at 367. Likewise, the Third Circuit in Bistrian observed, as has the Seventh Circuit, that a failure to intervene is a paradigmatic example of a failure to protect claim, and in no way requires an extension or expansion of the case law to be established. *Id.* at 371. The very case Marquez cites for the proposition that Plaintiff's claim was not clearly established in 2012 thus directly refutes the claim and explains that such claims were indeed clearly established and compelled by prior Supreme Court case law. Thus, Marquez is clearly not entitled to qualified immunity as to this claim based on the facts alleged in the amended complaint.

### 3. Plaintiff's Conspiracy to Commit First Amendment Retaliation Claim

Marquez also seeks to have this Court dismiss Plaintiff's claim for a first amendment retaliation conspiracy as to her. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "The key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). In his complaint, Plaintiff clearly

11

pleads that many of the abuses he suffered by guards other than Marquez were motivated by his filing civil complaints, and that Officers White and Hamilton set up the assault he suffered at the hands of another inmate to retaliate against him. Thus, as to White and Hamilton, it is clear that Plaintiff pleads a cognizable claim for First Amendment Retaliation. As to Marquez, however, Plaintiff does not directly plead that she refused to protect him or intervene in the assault based on this same retaliatory motive. Instead, Plaintiff's retaliation claim as to Marquez depends heavily upon his allegations that she was part of a conspiracy which caused the attack and then covered up the alleged misdeeds of White and Hamilton. Plaintiff's retaliation claim as to Marquez thus rises and falls with his conspiracy allegations.

> To plead a claim for a conspiracy under 42 U.S.C. § 1983,
>
>> as with a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must establish that there was a "meeting of the minds" between the members of the conspiracy. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Thus, a complaint alleging conspiracy must "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. . . . " *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). As a plaintiff must provide sufficient factual support to raise his conspiracy claims above a speculative level to plausibility, *see Twombly*, 550 U.S. at 555, "the bare allegation of an agreement is insufficient to sustain a conspiracy claim." *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012). Likewise, it "is insufficient to allege that 'the end result of the parties' independent conduct caused plaintiff harm or even that alleged perpetrators of the harm acted in conscious parallelism.'" *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (quoting *Novellino v. N.J. Dep't of Corr. Mountainview Youth*, No. 10-4542, 2011 WL 3418201, at *15 (D.N.J. Aug. 3, 2011).
>
> *Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *11 (D.N.J. Aug. 19, 2015).

As Plaintiff has clearly pled that some officers (most notably White and Hamilton) engaged

12

in a conspiracy to retaliate against him in violation of the First Amendment, the question as to Marquez is whether Plaintiff has adequately pled that she was a part of that conspiracy. In his amended complaint, however, Plaintiff connects Marquez to the alleged conspiracy with only the following allegation: that Marquez and other officers "[e]ach collectively & individually conspired to cover up the nature & extent of the assault . . . by . . . filing false reports & attempting to fabricate, plant, & otherwise create evidence to cover up & minimize the intentional willf[u]l & criminal actions committed against" Plaintiff. (ECF No. 74 at 10). The problem with this allegation as to conspiracy is that it is essentially a conclusory allegation as to the two key elements of conspiracy – agreement and concerted action, as opposed to conscious parallelism. A conclusory allegation is insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. 678. The facts as pled simply do not provide a plausible basis from which one can infer that Marquez agreed to engage in this cover up rather than simply wrote the allegedly false reports to protect her own failure to intervene in the assault. Without further factual allegations to what was "covered up" by Marquez's reports or how she covered up the retaliation, as opposed to her failure to protect Plaintiff, Plaintiff has failed to plead a cognizable conspiracy claim as to his retaliation claim, and his conspiracy to retaliate claim must be dismissed without prejudice as a result. *Id.*

      The Court notes that this conclusion differs from that drawn in the initial screening opinion in this matter. The difference between the two conclusions is not without support, however. In his original complaint, Plaintiff alleged that White and Hamilton ordered Marquez to unlock the cell of Plaintiff's attacker so that he could assault Plaintiff, which she then did. That allegation, if true, would provide a basis to show her complicity with the actions of White and Hamilton to have Plaintiff attacked based on his prior complaints and are thus sufficient to state a claim as to

13

agreement and concerted action. Plaintiff, however, removed that allegation from his amended complaint, and even when he sought to file a purported second amended complaint did not seek to re-plead that allegation. (ECF No. 74, 113). Thus, it does not appear that Plaintiff either was unaware that his amended complaint would replace his original complaint, or in any way intended the two to be read together to include the excised allegation regarding Marquez. Likewise, counsel for Plaintiff did not seek to amend Plaintiff's complaint in response to the motion to dismiss to re-allege those facts in support of the conspiracy claim. Thus, this Court concludes that those facts were purposefully removed from Plaintiff's claims, and does not consider that removed allegation in this opinion. Without those allegations, Plaintiff pleads only a conclusory allegation as to the conspiracy, and as such fails to state a claim for conspiracy to retaliate against him under § 1983 in his amended complaint. Plaintiff's conspiracy to retaliate claim must therefore be dismissed without prejudice at this time.

## III. CONCLUSION

For the reasons stated above, this Court grants in part and denies in part Defendant's motion to dismiss.  An appropriate order follows.

Dated: August 1, 2016

   *s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge

15