**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| ALLEN J. FARMER, <br><br> Plaintiff, <br><br> v. <br><br> GARY M. LANIGAN, et al., <br><br> Defendants. | Case No. 12-cv-5716 (SDW) (SCM) <br><br> **OPINION** <br><br><br> May 2, 2017 |

**WIGENTON**, District Judge.

Before this Court is the Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56 by Defendants former Union County Jail Director Brian Riordan, Captain Lazaro Alphonso, and Lieutenant Anthony Bonito (collectively, "Union County Defendants"); New Jersey Department of Corrections Lieutenant Mark Perkins, Senior Corrections Officer ("SCO") Frank White, SCO Melvin Hamilton, SCO Abrams, SCO Merriell, Corrections Officer Recruit ("CO") Debra Marquez, CO Payne, New Jersey Department of Corrections Special Investigations Division ("SID") Investigator A. Dolce, and SID Investigator Nancy Zook (collectively, "State Defendants"); and Rutgers, the State University of New Jersey ("Rutgers") medical providers Dr. Abu Ahsan ("Dr. Ahsan") and Nurse Practitioner Carol Gallagher ("Gallagher") (collectively, "Medical Defendants").

This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On August 9, 2011, Plaintiff Allen J. Farmer ("Plaintiff" or "Farmer") was in the custody of the Union County Department of Corrections when he attempted suicide. (Am. Compl. ¶ 27.) Plaintiff was taken to the emergency room at Trinitas Regional Medical Center ("Trinitas") where a physician referred him to the Ann Klein Forensic Center ("Ann Klein") to receive mental health treatment due to a high risk of suicide. (*Id*. ¶ 28.)

While awaiting transfer to Ann Klein, Plaintiff was transferred from Trinitas back to Union County jail on August 10, 2011, which he alleges was orchestrated by Union County Defendants. (*Id*. ¶ 29.) Plaintiff avers Union County Defendants then rescinded Plaintiff's order for transfer to Ann Klein[1] and instead sought his transfer to New Jersey Department of Corrections custody in retaliation for Plaintiff's initiation of two civil actions against Union County jail and its personnel.[2] (*Id*. ¶ 30.)

Plaintiff's transfer to New Jersey state prison was effectuated on September 26, 2011. (*Id*. ¶ 31.) He claims that upon his transfer he was subjected to punitive conditions of confinement without due process that resulted in harassment, intimidation, and threats of physical violence from

---

[1] Plaintiff was later transferred to Ann Klein in March 2012, however it appears this transfer was pursuant to a Court order for the purposes of a competency evaluation unrelated to the Trinitas physician's 2011 referral. (*See* Trelease Decl., Ex. C at 130:18 – 131:19, 207:8 – 25.)
[2] Defendant Riordan applied for Plaintiff's transfer to state custody by way of a September 15, 2011 letter submitted to New Jersey Department of Corrections Commissioner Gary Lanigan. (Trelease Decl., Ex. G.)

2

State Defendants. (*Id* ¶¶ 31 – 33.) On February 4, 2012, a fellow inmate assaulted Plaintiff while he was cleaning his cell, allegedly leaving him severely injured. (*Id* ¶¶ 34 – 36.) Plaintiff avers State Defendants conspired to facilitate this attack in retaliation for his pending Union County lawsuits and failed to provide Plaintiff with necessary medical treatment following the attack. (*Id*. ¶¶ 36 – 45, 53.) Plaintiff alleges Medical Defendants then proceeded to deny him adequate medical treatment despite his continuous complaints regarding his injuries. (*Id* ¶¶ 45 – 47.)

On March 14, 2014 Plaintiff filed his Amended Complaint pursuant to 42 U.S.C. § 1983.[3] He brings two claims against Union County Defendants for retaliation and deliberate indifference to his serious medical needs. (*Id* ¶¶ 60 – 61.) Plaintiff brings claims against State Defendants for violation of his due process rights, retaliation, conspiracy, failure to protect, excessive force, and deliberate indifference to his serious medical needs. (*Id* ¶¶ 60 – 63.) He also brings a claim against Medical Defendants for deliberate indifference to his serious medical needs. (*Id* ¶ 63.) On November 30, 2016 Defendants jointly filed a summary judgment motion seeking dismissal of Plaintiff's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an

---

[3] Section 1983 states, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

### III. DISCUSSION

#### a. Union County Defendants

A § 1983 claim for deliberate indifference to serious medical needs is shown if a defendant intentionally denies or delays access to medical care or intentionally interferes with treatment once it is prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal marks omitted). To prevail on his retaliation claim against Union County Defendants, Plaintiff must demonstrate, as a threshold matter, that the conduct which led to their alleged retaliation was constitutionally protected. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). He must then prove they caused him to suffer adverse action and were substantially motivated by this constitutionally protected conduct. *Id*.

Union County Defendants argue that Plaintiff's transfers away from Trinitas and to state custody do not demonstrate they retaliated or were deliberately indifferent to Plaintiff's medical needs because these transfers were approved by other individuals. (Defs.' Br. at 13 – 15, 22 – 25, 27.) Yet, although Plaintiff's removal from Trinitas back to Union County jail was authorized by a physician in an August 10, 2011 letter, it appears this letter was written after Union County

Defendant Alphonso advised the physician that failure to transfer Plaintiff would pose safety risks. (*See* Marx Decl., Ex. B.) The parties also dispute the motive behind Union County Defendant Riordan's subsequent September 15, 2011 letter seeking Plaintiff's transfer from Union County jail to state custody, given it cited Plaintiff's "consistent disruptive institutional behavior" but included no mention of Plaintiff's pending transfer to Ann Klein.[4] (Trelease Decl., Ex. G.) Finally, the record does not clarify why the order to transfer Plaintiff to Ann Klein was apparently never effectuated. (*See* Defs.' Br. at 16; Pl.'s Br. at 27 n.8.)

Giving all favorable inferences to Plaintiff, there are genuine issues of material fact regarding Plaintiff's claims against the Union County Defendants, making summary judgment on them inappropriate at this stage.[5]

### b. State Defendants

As a threshold matter, State Defendants seek the dismissal of Plaintiff's claims against them pursuant to the Prison Litigation Reform Act ("PLRA")[6] because they argue Plaintiff failed to exhaust his administrative remedies with regard to the allegations in his Amended Complaint against them. (Defts.' Br. at 28 – 34.) Plaintiff avers he filed grievances for all allegations contained in his Amended Complaint but also that he did not receive responses to all of his

---

[4] The type of transfer requested also appears to have been highly unusual. (*See id.*, Ex. O at 34:9 – 23; *see also* Marx Decl., Ex. D at 17: 1 – 4.)

[5] If Plaintiff is able to prove Union County Defendants intentionally interfered with his medical treatment in retaliation for his pending lawsuits, this would constitute a violation of a clearly-established constitutional right. As such this Court will not dismiss Plaintiff's claims against Union County Defendants on the grounds that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

[6] The PLRA states, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.

grievance forms. (Farmer Cert. at ¶¶ 9, 11, 14.) Such failure to respond by the State Defendants would render the administrative remedies "unavailable" to Plaintiff for purposes of the PLRA. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). Plaintiff maintains that, during the relevant time period, inmates were not permitted to maintain copies of the grievance forms or appeals they submitted. (*See* Farmer Cert. at ¶¶ 15, 17.) State Defendants do not appear to dispute that inmates were not allowed to retain a copy of their submitted forms. (Defs.' Reply Br. at 2 – 4.) Thus whether Plaintiff exhausted the administrative remedies available to him is a disputed question of fact. This Court will therefore not dismiss Plaintiff's claims against the State Defendants pursuant to the PLRA.

Plaintiff claims State Defendants denied him his due process rights by subjecting him to punitive conditions of confinement without a hearing. (Am. Compl. ¶ 31.) In order to be held liable for a violation of Plaintiff's due process rights, a defendant must have personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff has not identified which State Defendants had any personal involvement in the decision-making or implementation of Plaintiff's placement or housing. (Am. Compl. ¶¶ 31 – 32; Pl.'s Br. at 43 – 45.) This Court must therefore dismiss Plaintiff's due process claim.

In order to prevail on his claim that the February 4, 2012 assault was the result of a retaliatory conspiracy, Plaintiff must prove State Defendants had a "meeting of the minds" and conspired to deprive him of a federally protected right. *See Ashton v. City of Uniontown*, 459 F. App'x 185, 190 (3d Cir. 2012); *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008). To establish that State Defendants failed to protect him, Plaintiff will have to prove they had a realistic and reasonable opportunity to intervene and failed or refused to do so. *Smith v. Messinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).

7

State Defendants categorize Plaintiff's allegation that his February 4, 2012 assault was part of a retaliatory conspiracy as "nothing more than baseless conjecture." (Defts.' Br. at 41.) Yet a number of factual issues remain in dispute regarding the events surrounding Plaintiff's assault. For example, Plaintiff alleges that a gate padlock was deliberately either tampered with or left unlocked by State Defendants in order to allow the inmate to assault him. (Am. Compl. ¶ 51.) The record indicates confusion as to whether the lock received a normal inspection the morning of the assault, and also shows that the lock broke in an unusual nature. (*See* Marx Decl., Ex. E at 37:21 – 44:13, Ex. K at 80: 7 – 21.) An inmate witness avers that after seeing the gate unlocked prior to the assault and informing State Defendant Hamilton, he was told to ignore it. (Marx Decl., Ex. J.)

This Court also notes the strange confluence of events that left a sole inexperienced guard on duty to watch the inmates while they were out of their cells cleaning when Plaintiff's assault occurred, which appears to have been unusual. (Dronson Decl., Ex. S at 48:1 – 49:10, Ex. X at 24:9 – 21.) While such circumstantial evidence surely does not prove Plaintiff's allegations, it makes summary judgment inappropriate. *See Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (holding that "circumstantial evidence alone must be sufficient to defeat summary judgment" in some situations). This Court therefore will not dismiss Plaintiff's claims against State Defendants for retaliation, conspiracy, and failure to protect.[7]

Finally, Plaintiff contends that after the assault, State Defendants denied him adequate medical care because they refused to transport him to the infirmary after he voiced his inability to

---

[7] State Defendants have not set forth any specific argument that summary judgment should be granted on Plaintiff's claim that State Defendants used excessive force against him. This Court therefore will not address that claim at this time.

walk, and instead State Defendants only summoned a nurse ("Rapp") to evaluate him in his cell.[8] (Am. Compl. ¶¶ 39 – 43.) Plaintiff alleges Defendant Perkins told Rapp to falsify her report to indicate Plaintiff did not complain of any injuries. (*Id*. ¶ 42.) This Court notes that although Rapp recorded only a superficial injury to Plaintiff's left ankle, other medical professionals subsequently reported Plaintiff appeared to have difficulty walking and complained of numbness in his right leg. (See Raymond-Flood Decl., Exhibit W, D00254, D00257, D00249 – D00251) Rapp has not been deposed, as she could not be located for service in this lawsuit. (Pl.'s Br. at 43, Marx Decl., Ex. L.) Given these genuine factual disputes regarding Plaintiff's allegation that State Defendants denied him adequate medical care, this Court will not grant summary judgment on this claim.[9]

### c. Medical Defendants

Medical Defendants argue Plaintiff has failed to show he suffered a serious medical condition or that they were deliberately indifferent to his alleged condition. However, Medical Defendants concede that over two years after the assault, Plaintiff underwent a consultation with a neurosurgeon who informed Plaintiff he was a candidate for cervical fusion surgery. (Statement of Material Facts ("SMF") ¶ 135.) This is sufficient evidence at this stage of a "serious" condition

---

[8] It appears State Defendants do not dispute that Plaintiff was not provided with transportation to the infirmary following the assault, but rather contend this does not amount to a refusal to provide adequate medical care given that a nurse was summoned to Plaintiff's cell. (Defs.' Br. at 51 – 52.)

[9] Because genuine factual disputes exist regarding whether State Defendants violated Plaintiff's clearly-established constitutional rights, this Court will not dismiss Plaintiff's claims against State Defendants on the grounds that they are entitled to qualified immunity. However, this Court notes that Plaintiff brings his § 1983 claims against State Defendants in both their individual and official capacities. (Am. Compl. ¶ 25.) "Neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal quotation marks omitted). Thus, Plaintiff's claims against State Defendants in their official capacities are barred. His individual capacity claims against them, however, may proceed. *See Hafer*, 502 U.S. at 27 ("[O]fficers sued in their personal capacity come to court as individuals. A government official in the role of [a] personal-capacity defendant thus fits comfortably within the statutory term 'person.'").

for purposes of a deliberate indifference claim at this stage. *See, e.g., Greenland v. United States*, 661 F. App'x 210, 214 (3d Cir. 2016) (taking all claims and inferences in Plaintiff's favor, injury was "serious" because doctor diagnosed hernia requiring surgery).

Without a showing of "deliberate indifference," simple medical malpractice is insufficient to present a constitutional violation. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Medical Defendants concede that for two years after his assault, Plaintiff was only provided with x-rays despite his multiple requests for an MRI. (SMF ¶¶ 86 – 89, 94 – 95, 118.) It appears denying such requests was very unusual. (*See* Marx Decl., Ex. F at 41:12 – 42:20.) Therefore, a reasonable jury could find that denying these requests for two years after an assault constituted deliberate indifference to Plaintiff's serious medical needs. This Court therefore will not grant summary judgment on this claim.

## IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. An appropriate Order follows.

                                                s/ *Susan D. Wigenton*  
                                                **SUSAN D. WIGENTON**  
                                                **UNITED STATES DISTRICT JUDGE**

Orig:         Clerk  
cc:            Hon. Steven C. Mannion, U.S.M.J.  
               Parties